UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Linda F. Flowers,<br>    Plaintiff,<br>    v.<br>Northern Middlesex YMCA,<br>    Defendant. | No. 3:15-cv-705 (MPS) |

**MEMORANDUM AND ORDER**

Plaintiff Linda Flowers has brought sex discrimination and retaliation claims against Defendant Northern Middlesex YMCA (the "YMCA") under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Connecticut Fair Employment Practices Act ("CFEPA"). The YMCA has moved to dismiss Flowers's complaint in its entirety, arguing that Flowers's allegations fail to state a plausible claim for relief. Because Flowers's complaint asserts sufficient factual allegations to state plausible claims of a hostile work environment and retaliation in violation of Title VII and CFEPA, I deny the YMCA's motion to dismiss.

**I.**   **Background**

The complaint alleges the following facts. In 1984, the YMCA hired Flowers as a housekeeper. (Compl. ¶ 7.) She remained in that position until July of 2014. (*Id.* at ¶ 28.) About ten years earlier, on March 8, 2004, Bruce Thortenson, Director of Maintenance at the YMCA, struck and slid his hand across Flowers's buttocks. (*Id.* at ¶ 12.) This upset Flowers, and she reported Thortenson's conduct to Frank Sumpter, who was at the time the president of the YMCA. (*Id.*) Soon after Flowers reported the incident, Sumpter placed a report of Flowers's complaint in her personnel file. (*Id.*)

1

On January 23, 2014, Thortenson touched the side of Flowers's breast and left arm. (*Id.* at ¶ 10.) Flowers immediately told Thortenson not to "put his hands" on her. (*Id.*) Flowers reported the incident to the YMCA's human resources personnel. (*Id.* at ¶ 11.) The following day, a human resources representative informed Flowers that she had spoken to Thortenson, and that Thortenson would not touch Flowers again. (*Id.*) At the conclusion of their discussion, the human resources representative hugged Flowers, which caused Flowers to leave crying "in a state of immense distress." (*Id.*)[1]

After the January 23, 2014 incident, Thortenson instructed other YMCA employees not to speak with Flowers and not to enter the laundry room if Flowers was there. (*Id.* at ¶ 16.) Thortenson also "frequently gave [Flowers] disgruntled facial stares" when she passed him or while she was working. (*Id.*) On April 7, 2014, Flowers allowed a representative to review her personnel file. (*Id.* at 13.) A search of the file yielded no documentation of the January 23, 2014 incident between Thortenson and Flowers. (*Id.*)

Flowers filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CRHO") and the United States Equal Employment Opportunity Commission ("EEOC") on April 10, 2014, in which she alleged violations of state and federal anti-discrimination laws. (*Id.* at ¶ 6.) After Flowers filed her complaint with the CHRO and EEOC, other employees refused to communicate with her about work. (*Id.* at ¶ 18.)

Between the time that the YMCA first hired Flowers and January 2014, the YMCA employed two housekeepers. (*Id.* at ¶¶ 19, 21.) The second housekeeper left the YMCA after January 2014. (*Id.*) Michelle – another YMCA employee – informed Flowers that due to financial constraints the YMCA did not intend to hire another housekeeper, and that Flowers would need to cover the former housekeeper's duties in addition to Flowers's normal

---

[1] Flowers does not claim that this hug contributed to a hostile work environment.

responsibilities.  (*Id.* at ¶¶ 19, 20.)  Flowers attempted to accommodate her additional responsibilities by arriving at work around 7:00 a.m. – which apparently was earlier than she would arrive prior to January of 2014 – but another YMCA employee informed her that she could not work extra hours because she was "making too much money."  (*Id.* at ¶ 22.)  Flowers chose not to quit because she believed that if she did, she would not receive a pension.  (*Id*. at ¶ 25.)  At some point after she was assigned the additional responsibilities, Flowers suffered a stroke and, as a result, was forced to resign from her position.  (*Id.* at ¶¶ 27–28.)

After obtaining a release of jurisdiction by the CHRO and EEOC on February 17, 2015 (*id.* at ¶ 6), Flowers filed suit in this Court on May 11, 2015.  Flowers's complaint asserts the following counts: (1) sex discrimination in violation of Title VII due to a hostile work environment, (2) retaliation in violation of Title VII, (3) sex discrimination in violation of CFEPA due to a hostile work environment, and (4) retaliation in violation of CFEPA.  On August 11, 2015, the YMCA filed this motion to dismiss.

## II.     Legal Standard

A motion to dismiss tests the sufficiency of a claimant's pleadings.  In considering a motion to dismiss, the Court takes Flowers's "factual allegations to be true and [draws] all reasonable inferences in" her favor.  *Loginovskaya v. Batratchenko*, 764 F.3d 266, 269–70 (2d Cir. 2014).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (internal quotation marks omitted), and raises "a

right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Although a court must accept as true all of the allegations contained in a complaint, this tenet is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Sikhs for Justice, Inc. v. Gandhi*, 614 Fed. App'x 29, 30 (2d Cir. 2015) (internal quotation marks omitted).

**III. Discussion**

    **A. Hostile Work Environment (Counts One and Three)**

In Counts One and Three, Flowers claims that the YMCA is liable for Thortenson's sexual harassment because it created a hostile work environment in violation of Title VII and CFEPA, respectively. The parties do not dispute that a hostile work environment claim under CFEPA is analyzed in the same manner as one brought under Title VII. *See, e.g.*, *Martin v. Town of Westport*, 558 F. Supp. 2d 228, 242 (D. Conn. 2008) ("As with CFEPA discrimination claims, Connecticut courts look to federal law for guidance when analyzing CFEPA hostile work environmental claims."). I therefore use the same legal framework in addressing the YMCA's argument that Flowers fails to state federal and Connecticut law hostile environment claims. I conclude that, while a close question, Flowers alleges sufficient facts to state plausible claims of a hostile work environment in violation of Title VII and CFEPA because the physical harassment alleged was sufficiently severe to alter Flowers's work conditions for the worse.

In the context of a hostile work environment claim, an employer violates Title VII[2] and CFEPA[3] when a supervisor's conduct is "sufficiently severe or pervasive to alter the conditions

---

[2] The pertinent provision of Title VII reads, "It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . ." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment violates this provision because, "[w]ithout question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). "The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to

of [the victim's] employment and create[s] an abusive working environment." *Meritor*, 477 U.S. at 67 (internal quotation marks omitted). The harassment must be objectively and subjectively "severe or pervasive": "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Harris*, 510 U.S. at 21–22. As for the objective analysis, "[w]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Redd v. New York Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) (internal quotation marks and alterations omitted). "These may include [1] the frequency of the discriminatory conduct; [2] its severity; [3] whether it is physically threatening or humiliating, or a mere offensive utterance; and [4] whether it unreasonably interferes with an employee's work performance." *Id*. "The objective hostility of a work environment . . . [is] viewed from the perspective . . . of a reasonable person in the plaintiff's position, considering all the circumstances including the social context in which particular behavior occurs and is experienced by its target." *Id.* at 176 (internal quotation marks omitted). "[A] plaintiff need not show that her hostile working environment was both severe *and* pervasive; only that it was sufficiently severe *or* pervasive, or a sufficient combination of these elements, to have altered her

---

work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted).

[3] The pertinent provision of CFEPA reads,
> It shall be a discriminatory practice in violation of this section . . . [f]or an . . . employer's agent … to harass any employee . . . on the basis of sex . . . . 'Sexual harassment' shall, for the purposes of this section, be defined as any unwelcome sexual advances . . . or any conduct of a sexual nature when . . . such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment.

Conn. Gen. Stat. § 46a-60(a)(8).

working conditions." *Pucino v. Verizon Comms., Inc.*, 618 F.3d 112, 119 (2d Cir. 2010) (emphasis in original).

"Isolated incidents usually will not suffice to establish a hostile work environment, although we have often noted that even a single episode of harassment can establish a hostile work environment if the incident is sufficiently 'severe.'" *Redd*, 678 F.3d at 175; *see also Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) ("Usually, a single isolated instance of harassment will not suffice to establish a hostile work environment unless it was 'extraordinarily severe.'"); *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) ("Isolated, minor acts or occasional episodes do not warrant relief."). This is because Title VII "does not set forth a general civility code for the American workplace." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). Nonetheless, the Second Circuit has repeatedly "cautioned against setting the bar too high, noting that while a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse*." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (emphasis in original) (internal quotation marks and alterations omitted).

This legal standard has proven difficult for lower courts to implement, particularly at the motion to dismiss stage. Courts have arrived at seemingly inconsistent conclusions about what conduct suffices to create a hostile work environment. After reviewing the facts of two "remarkably analogous" cases, one court noted that they

> came to opposite results. This pair of decisions, taken from the universe of muddled case law confronting similar facts, illustrates just how context-dependent and frequently inconsistent judicial decisionmaking of this kind can be.
>
> Sometimes, shocking behavior that seems self-evidently to satisfy the standard of "alter[ing] the conditions of . . . [the] work environment," fails to state a claim.

6

> *See, e.g.*, *Prince v. Cablevision Sys. Corp.*, No. 04-cv-8151 (RWS), 2005 WL 1060373, at *7-10 (S.D.N.Y. May 6, 2005) (granting a motion to dismiss hostile work environment claims based on allegations that a senior employee made sexual advances toward the plaintiff, solicited her for sex, and tried to kiss her and put his tongue down her throat). Other circumstances presenting apparently less atrocious behavior nonetheless suffice to survive judicial disposition. *See, e.g., Howley*[, 217 F.3d at 154] (reversing a lower court's grant of summary judgment for defendants based on allegations that a subordinate had engaged in a public tirade against his female supervisor involving sexist expletives and implications of her sexual misconduct).
>
> These decisions often lack any standard easily applied to other cases. Ultimately, they reveal how difficult it is for courts to perform the extraordinarily sensitive and comprehensive analysis necessary to assess a total set of workplace circumstances and determine whether a particular set of words and actions were enough to make that workplace a different, less tolerable environment for the victimized party.

*Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 258–59 (S.D.N.Y. 2014).

      The YMCA argues that Flowers's allegations do not state a hostile work environment actionable under Title VII or CFEPA. It emphasizes that Flowers never asked for "further investigation" into the March 2004 incident (Def.'s MTD Mem. at 7), and that she alleges no instances of harassment during the ten years in between the 2004 and 2014 incidents. In response, Flowers argues that Thortenson's post-January 23, 2014, conduct – instructing employees not to speak to Flowers or enter the laundry room when Flowers was in it and staring at Flowers in a disgruntled manner – made Flowers's work environment hostile: "Given the recent touching of her breast by this known predator, Thortenson's directives to other employees to isolate Plaintiff physically and mentally caused the Plaintiff to reasonably fear for her personal safety in the workplace." (Pl.'s Opp. Mem., ECF No. 16, at 8.)

      As an initial matter, I disagree with Flowers that Thortenson's post-January 23, 2014 conduct constituted sexual harassment that can be considered for purposes of the hostile environment analysis. The complaint does not allege facts making it plausible that Thortenson's

post-January 23 conduct, none of which had sexual overtones, was a result of Flowers's sex. Rather, the complaint's chronology suggests that his post-January 23 conduct stemmed from her opposing his earlier harassing actions by reporting the incident to human resources.  The allegations regarding his conduct after January 23, 2014, are therefore relevant to Flowers's *retaliation* claims, not her hostile work environment claims.  *See Ericson v. City of Meriden*, 113 F. Supp. 2d 276, 288 (D. Conn. 2000) ("[Plaintiff] has alleged only one incident . . . which could conceivably support an inference of discrimination based on her sex.  The later incidents of hostile behavior by her co-workers toward her . . . occurred after [plaintiff reported the supervisor's conduct].  While these allegation[s] support the retaliation claim, . . . they do not support an inference that gender-based animus prompted the hostility.").  The only allegations relevant to Flowers's hostile environment claims based on sexual harassment, then, are the two instances of Thortenson's physical contact with Flowers, which occurred in March 2004 and January 2014.

    Flowers's allegations present a difficult case; the result of weighing the *Harris* factors appears near equipoise.  The first factor – frequency of harassment – weighs against Flowers: the allegations of sexual harassment consist of only two isolated incidents that occurred ten years apart.  The second, severity of the harassment, weighs in Flowers's favor.  Physical abuse, such as unconsented touching and striking – particularly on sensitive areas of the body such as buttocks or breasts – are more severe than other forms, such as "vulgar banter."  *See, e.g.*, *Redd*, 678 F.3d at 177 ("On one side lies [complaints of] sexual assaults; [other] physical contact[, whether amorous or hostile, for which there is no consent express or implied]. . . . On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish

8

workers." (internal quotation marks omitted)). In this sense, Thortenson's alleged "striking" of Flowers buttocks was particularly severe.

The third factor – whether the harassment is physically threatening or humiliating – weighs slightly in Flowers's favor. It is uncontroversial that unconsented touching of a woman's buttocks or breasts is physically intimidating and humiliating. Particularly when it has occurred on more than one occasion, the harassed employee is likely to fear that she will be subjected to further abuse, coloring subsequent interactions with her supervisor. Flowers's failure to allege additional facts detailing the two physical interactions at issue, however, limits the weight of her claim. For example, the complaint fails to indicate the manner in which Thortenson "touched" Flowers's breast and arm in 2014[4]: What were the surrounding circumstances of this touching? How long did it last? Where in the YMCA facility were Flowers and Thortenson? Did Thortenson say anything? Were others present? What was Thortenson's facial expression? *See Vito v. Bausch & Lomb, Inc.*, No. 07-cv-6500 CJS, 2010 WL 681230, at *11 (W.D.N.Y. Feb. 23, 2010) ("These alleged touches were not accompanied by any sexual comments or looks, and there is no indication that they were sexual in nature.") *aff'd* 403 Fed. App'x 593 (2d Cir. Dec. 17, 2010). While the Court is required to draw all reasonable inferences in Flowers's favor, it cannot speculate as to contextual facts surrounding the alleged interactions. The absence of contextual allegations is problematic in the context of a hostile work environment claim, in which the Court must engage in the "extraordinarily sensitive and comprehensive analysis necessary to assess a total set of workplace circumstances." *Pryor*, 992 F. Supp. 2d at 259.

---

[4] The Court explicitly provided Flowers an opportunity to amend her complaint in light of the purported deficiencies set out in the YMCA's motion to dismiss. (ECF No. 12.) The Court noted that should Flowers choose not to amend her complaint in response to the motion to dismiss, the Court would be unlikely to permit Flowers to amend her complaint in the future. (*Id.*) Flowers forewent her opportunity to add allegations regarding Thortenson's conduct by choosing not to amend her complaint within the period provided by the Court.

With respect to the fourth factor, whether the harassment unreasonably interfered with Flowers's ability to perform in her position as a housekeeper, the details set forth in Flowers's complaint come up short. The only allegations in the complaint suggesting that Flowers's ability to perform her job functions was harmed during the period at issue is the alleged increase in her workload and isolation from other employees. As stated, however, those relate to Thortenson's *retaliatory* actions, not his sexual harassment.

On balance, the *Harris* factors demonstrate that while Flowers alleges instances of relatively severe harassment, the substance of those allegations are thin. Thortenson's conduct, as alleged, was inappropriate and harassing. His physical abuse of Flowers was likely threatening, and it is reasonable to infer that it made Flowers fear subsequent interactions with her supervisor. The instances of conduct were few and far between, however, and the allegations do not suggest that Thortenson accompanied his physical affront with additional harassment, verbal or otherwise.

In comparing Flowers's allegations to analogous case law, I find that Flowers has alleged barely enough to state a plausible claim of a hostile environment based on sexual harassment. In *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759 (2d Cir. 1998) *abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the court addressed a hostile work environment claim in which the plaintiff asserted that a supervisor "deliberately touched [her] breasts with some papers that he was holding in his hand," and "told [her] she had been voted the 'sleekest ass' in the office." *Id.* at 768. The Second Circuit held that these instances of harassment were insufficiently severe or pervasive to prove a hostile work environment: "[t]hough the two incidents in question . . . are obviously offensive and inappropriate, they are sufficiently isolated and discrete that a trier of fact could not reasonably

10

conclude that they pervaded [her] work environment. Nor are these incidents, together or separately, of sufficient severity to alter the conditions of [her] employment without regard to frequency or regularity." *Id.* In *Vito v. Bausch & Lomb, Inc.*, 403 Fed. App'x 593 (2d Cir. Dec. 17, 2010), the Second Circuit affirmed a district court's entry of summary judgment against a plaintiff who alleged that her supervisor placed his hand on her shoulder, which "slipped down . . . and touched her right breast," reasoning that, even "assuming that this incident occurred, its severity falls short of the deliberate touching of the petitioner's breast in *Quinn*." *Id.* at 597.

Flowers's allegations are more severe than the harassment in *Quinn* and *Vito* in three ways: (1) Thortenson's apparent intent, (2) the manner of physical contact, and (3) while far apart, the fact that this type of physical contact occurred more than once. As to the first, it is reasonable to infer based on the facts alleged that Thortenson appeared intentionally and physically to harass Flowers by striking and sliding his hand across her buttocks and touching her breast. Put another way, a reasonable person in Flowers's shoes would have interpreted Thortenson's acts as neither inadvertent nor unintentional. The *Vito* court found it crucial that the physical contact appeared to the plaintiff to be unintentional, italicizing the word "slipped" when recounting that the supervisor's "right hand *slipped* down [from Vito's shoulder] and touched her right breast." 403 Fed. App'x at 597. *See also Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 185 (E.D.N.Y. 2012) ("Intentionally grabbing, squeezing, or otherwise feeling an intimate part of another's body is vastly different than brushing against it—whether on purpose or by accident.").

The second difference in this case – that on two occasions Thortenson touched sensitive areas of Flowers's body *with his hands* – makes the physical harassment more severe than that in *Quinn*. In *Quinn*, the supervisor touched the plaintiff's breasts with a piece of paper he was

11

holding, not his actual body.  Here, not only did Thortenson touch Flowers with his hands at two separate times, but on one of the incidents, he "struck" a sensitive area on Flowers's body with his hand.  Other courts have found this distinction significant.  *See, e.g.*, *Redd*, 678 F.3d at 180 ("In *Quinn*, the only allegation of touching before us was that the plaintiff's supervisor on one occasion had touched her breast with some papers he was holding.  There was no suggestion that he had engaged in the substantially more intrusive behavior here, of repeatedly touching [plaintiff] with his hands or any other part of his body, or that he had 'felt' her breasts." (citation omitted)); *Guzman v. Macy's Retail Holdings, Inc.*, No. 09-cv-4472(PGG), 2010 WL 1222044, at *5 (S.D.N.Y. 2010) (distinguishing *Quinn* by referring to the contact in that case as "incidental and fleeting").

Finally, this case differs from *Quinn* in that Thortenson subjected Flowers to physical sexual harassment more than once.  While the ten-year gap between the acts – and the absence of any alleged incident during that gap – would preclude any inference that Thortenson's harassment was pervasive, a hostile work claimant need not demonstrate pervasiveness to prevail.  Rather, a plaintiff can prevail by showing "that [the harassment] was sufficiently severe or pervasive, *or a sufficient combination of these elements*, to have altered her working conditions."  *Pucino*, 618 F.3d at 119 (emphasis added).  Here, the hostile nature of the work environment, produced primarily by the severity of Thortenson's touching, sliding across, and striking Flowers in sensitive areas, is enhanced by the fact that Thortenson did so more than once.[5]  *See Redd*, 678 F.3d at 180 (distinguishing *Quinn* in that "[t]here was no suggestion that

---

[5] The fact that the first incident occurred beyond the statute of limitations for a Title VII claim does not preclude the court from considering it in deciding whether Flowers states a claim for a hostile work environment.  *See Morgan*, 536 U.S. at 118 ("Given . . . that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim.  In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment.").

[the supervisor] had engaged in . . . repeated[] touching" of the plaintiff); *Kouba v. Renzenberger, Inc.*, No. CIV 10-159 TUC FRZ (GEE), 2011 WL 7145606, at *5 (D. Ariz. Sept. 12, 2011) (granting summary judgment in favor of defendant when plaintiff proved only a "*single incident*" of "unwelcome physical conduct" (emphasis added)).

I admit that many, if not most, of the analogous cases in which courts have denied motions to dismiss or for summary judgment have presented instances of harassment more severe than what Flowers alleges. *See, e.g.*, *Wahlstrom v. Metro-North Commuter Ry. Co.*, 89 F. Supp. 2d 506 (S.D.N.Y. 2000) (denying summary judgment on hostile environment claim when evidence showed that co-worker gave plaintiff a bear hug, slapped plaintiff's buttocks multiple times, and later verbally attacked plaintiff); *Reid*, 876 F. Supp. 2d at 186 (denying summary judgment when supervisor "grabbed and squeezed" one of plaintiff's breasts and remarked, "those things are huge").  Nonetheless, as stated, the Second Circuit has repeatedly cautioned against resolving hostile environment claims via judicial disposition by setting the threshold for stating a hostile work environment claim too high. *See, e.g.*, *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004); *Terry*, 336 F.3d at 148; *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000); c*f. Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 75 (2d Cir. 2001) ("An Article III judge is not a hierophant of social graces.  Evaluation of ambiguous acts such as those revealed by the potential evidence in this case presents an issue for the jury." (internal quotation marks omitted)).

At the motion to dismiss stage, the Court must consider whether the allegations make out a plausible claim, or in other words, raise the claim "above the speculative level."  The complaint here asserts that on more than one occasion, Thortenson physically harassed Flowers by putting his hands on sensitive areas of her body, and on one of those occasions, striking her.  It is

13

plausible and not speculative to conclude that a reasonable employee in Flowers's shoes would fear that her body remained at risk of future physical harassment by Thortenson. *See Guzman*, 2010 WL 1222044, at *5 ("At the 12(b)(6) stage, [t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. … Here . . . Plaintiff has pled facts concerning unwanted sexual contact sufficient to defeat a motion to dismiss." (internal quotation marks omitted)). As a matter of law, it cannot be said that these actions, taken together, did not alter Flowers's working conditions. As a result I deny the YMCA's motion to dismiss as to Counts One and Three.

### B. Retaliation (Counts Two and Four)

Counts Two and Four assert claims that Thortenson and others retaliated against Flowers after she reported Thortenson's January 2014 conduct in violation of Title VII and CFEPA, respectively. As with hostile environment claims, Connecticut and federal retaliation claims operate under the same legal framework. *State v. Comm'n on Human Rights & Opportunities*, 211 Conn. 464, 469–70 (1989) ("Although the language of [Title VII] and that of the Connecticut statute differ slightly, it is clear that the intent of the legislature in adopting [CFEPA] was to make the Connecticut statute coextensive with the federal.").[6] I conclude that Flowers alleges sufficient facts to state a plausible retaliation claim in violation of Title VII and CFEPA.

Title VII[7] and CFEPA[8] prohibit an employer from retaliating against an employee because that employee has opposed or filed complaints of discriminatory conduct. A plaintiff

---

[6] The Connecticut Supreme Court went on to note that, "[n]evertheless, we have also recognized that, under certain circumstances, federal law defines the beginning and not the end of our approach to the subject." *Id.* at 470 (citation and internal quotation marks omitted). Because she presents her arguments under federal case law only, Flowers does not appear to assert that CFEPA provides her with any protections against retaliation that are different from Title VII.

[7] The anti-retaliation provision of Title VII reads,

14

normally proves a retaliation claim via the burden shifting mechanism identified in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under that regime, the plaintiff shifts the evidentiary burden to the defendant if she makes a *prima facie* showing of retaliation by proving (1) "participation in a protected activity," (2) "the defendant's knowledge of the protected activity," (3) "an adverse employment action," and (4) "a causal connection between the protected activity and the adverse employment action."  *Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 844 (2d Cir. 2013).  The YMCA contends that Flowers has failed to allege facts sufficient to state a *prima facie* retaliation claim.  The *McDonnell Douglas* mechanism, however, is only one way of proving a retaliation claim; a plaintiff can also demonstrate such a claim through direct proof of intentional retaliation.  Thus, a plaintiff need not allege facts establishing a *prima facie* showing of retaliation.  *See E.E.O.C. v. Port Authority of New York and New Jersey*, 768 F.3d 247, 253–54 (2d Cir. 2014) ("[A discrimination complaint] must at minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible." (internal quotation marks omitted)).  At the motion to dismiss stage, then, "the Court does not specifically apply the *McDonnell Douglas* burden-shifting test to determine whether Plaintiff has stated a retaliation claim, but rather generally assesses the plausibility of Plaintiff's claim based on the facts alleged in the Complaint."  *Brundidge v. Xerox Corp.*, No. 12-cv-6157-FPG, 2014 WL 1323020, at *3 (W.D.N.Y. March 13, 2014).

---

It shall be an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

[8] The anti-retaliation provision of CFEPA reads,

It shall be a discriminatory practice in violation of this section . . . [f]or any person [or] employer … to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in any proceeding [before the CHRO].

Conn. Gen. Stat. § 46a-60(4).

15

To survive the YMCA's motion to dismiss, then, Flowers's complaint must allege sufficient facts to plausibly demonstrate that Thortenson subjected Flowers to a materially adverse action, and that the but-for cause of that action was Flowers's reporting Thortenson's harassment to the human resources personnel or filing a complaint with the CHRO.  *See White*, 548 U.S. at 67–68 ("[A retaliation] plaintiff must show that a reasonable employee would have found the challenged action materially adverse . . ."); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation . . ."); *Littlejohn v. City of New York*, 795 F.3d 297, 317 (2d Cir. 2015) ("The Supreme Court . . . recently clarified . . . that, when an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication *virtually always* constitutes the employee's *opposition* to that activity." (emphasis in original) (citation, internal quotation marks, and alterations omitted)).

The YMCA contends that Flowers has not stated a retaliation claim because Flowers did not experience a materially adverse employment action.  In the retaliation context, an action is materially adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington*, 548 U.S. at 68 (internal quotation marks omitted).  "Such actions must be more than trivial harms and must go beyond the petty slights or minor annoyances that often take place at work and that all employees experience."  *Rodas v. Town of Farmington*, 567 Fed. App'x 24, 27 (2d Cir. May 20, 2014) (internal quotation marks omitted).  "An employer's actions need not be related to the terms and conditions of employment to be materially adverse for purposes of a Title VII retaliation claim."  *Levitant v. City of New York Human Res. Admin.*, 558 Fed. App'x 26, 28 (2d Cir. March 6, 2014).

After Flowers complained to human resources about Thortenson touching her, Thortenson instructed other YMCA employees not to speak to Flowers and not to enter the laundry room if Flowers was present. Contrary to the YMCA's assertion in its memorandum, the complaint does allege that other employees heeded Thortenson's instructions. (Compl. ¶ 18.) The YMCA argues that, even if her co-workers shunned Flowers at Thortenson's demand, this does not amount to a materially adverse employment action.[9] Certain district courts in this circuit have asserted that social isolation alone is not a materially adverse employment action. *See, e.g.*, *Cruz v. New York State Dep't of Corr. & Comty. Supervision*, No. 13-cv-1335(AJN), 2014 WL 2547541, at *6 (S.D.N.Y. June 4, 2014) ("Plaintiff's allegations that Johnson cause[d] him to be 'isolated, enjoy[ing] no collegiality as others did,' are insufficient, because such shunning is not more disruptive than a mere inconvenience' so as to establish that he suffered a materially adverse action."); *McCullough v. Xerox Corp.*, 942 F. Supp. 2d 380, 387 (W.D.N.Y. 2013) ("Courts have held that merely being given the proverbial cold shoulder by one's coworkers (even assuming that this could be imputed to the employer) is not enough to show that one has suffered an adverse employment action [for purposes of a retaliation claim]."). To the extent that these cases hold that employer-orchestrated isolation at work can never be sufficient to constitute a materially adverse action in a retaliation claim, I disagree. I find it unremarkable that a reasonable employee would be dissuaded from complaining about a sexually harassing act

---

[9] For this proposition, the YMCA cites *Leson v. ARI of Connecticut, Inc.*, 51 F. Supp. 2d 135, 142 (D. Conn. 1999). In *Leson*, the court granted summary judgment in favor of the employer on the plaintiff's retaliation claims because the plaintiff failed to prove that the retaliation resulted in a "tangible employment action" under *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), which the court interpreted as requiring an economic harm. But controlling case law has altered the applicable standard since the court entered its ruling in *Leson*. The Supreme Court's 2006 decision in *Burlington Northern and Santa Fe Ry. Co. v. White* clarified the standard for determining whether a retaliatory action resulted in a "materially adverse" employment action: whether the employer's actions are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." 548 U.S. at 57. This standard is more expansive than the standard for Title VII's substantive provision discussed in *Leson*. *See id.* at 67 ("[W]e conclude that Title VII's substantive provision and its antiretaliation provision are not coterminous. . . . We therefore reject the standards . . . that have limited actionable retaliation to so-called "ultimate employment decisions" [or "tangible employment action"]. (citation and internal quotation marks omitted)).

if she or he were aware that it would result in complete social isolation during work hours, particularly as a result of a demand from a supervisor with authority over the employee and his or her co-workers. The social environment in a workplace can prove to be a powerful motivator; fear of employer-sponsored isolation "might well" influence an employee's decision whether to "mak[e] or support[] a charge of discrimination." *White*, 548 U.S. at 57.

This Court was unable to uncover any controlling precedent stating that social isolation ordered by a supervisor cannot be a materially adverse action for purposes of a retaliation claim. The Second Circuit has recognized cognizable claims of retaliation for "transfer-based retaliation claims . . . [that involved] isolation," *Kellman v. Metropolitan Transp. Auth.*, 8 F. Supp. 3d 351, 384 (S.D.N.Y. 2014), but such cases entail isolation pertaining to a decrease in responsibilities or functions, not employer-orchestrated coworker isolation, *e.g.*, *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 209 (2d Cir. 2006) (holding defendant was not entitled to summary judgment when plaintiff "[s]upervis[ed] . . . a large number of managerial, professional and clerical support staff" in previous position, but was transferred to a position in which "he in fact was allowed to supervise no one"). Especially in light of my obligation to draw all reasonable inferences in the plaintiff's favor, I nonetheless conclude that the employer-orchestrated social isolation she alleges "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 57. Flowers's allegations of supervisor-driven social isolation in the workplace, which resulted from her opposition to Thortenson's sexual harassment, state a claim of retaliation.[10]

---

[10] The YMCA contends that Flowers also fails to allege that the increase in her workload after the second housekeeper left was caused in fact by her opposition to Flowers's harassment. Because I have concluded that Flowers has stated a claim of materially adverse employment action and because the complaint pleads facts suggesting that Flowers's report to human resources was the but-for cause of that adverse action, Flowers states a claim for retaliation in Counts Two and Four. As a result, I need not address whether Flowers states a retaliation claim regarding the increase in her housekeeping responsibilities after the YMCA refused to replace the second housekeeper.

### IV. Conclusion

Because Flowers alleges sufficient facts to state a plausible claim of a hostile work environment on the basis of sexual harassment and retaliation in violation of Title VII and CFEPA, the YMCA's motion to dismiss is DENIED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         March 11, 2016

---

The YMCA also argues that Flowers cannot state a claim of retaliation because she has not stated a claim of unlawful sexual harassment. Because, as discussed above, I conclude that Flowers states a claim of a hostile work environment, this argument is without merit. Even if I had concluded otherwise, however, the YMCA mischaracterizes controlling law. In this circuit, a plaintiff may prevail on a retaliation claim without proving that the alleged discriminatory act was unlawful as long as the plaintiff had a good faith reasonable belief that the employer's conduct was unlawful. *E.g.*, *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) ("[T]he plaintiff need not establish that the conduct she opposed was actually a violation of Title VII, but only that she possessed a 'good faith reasonable belief that the underlying employment practice was unlawful' under that statute.").